IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL BUSINESS ASSET FUNDING CORPORATION, a Delaware corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL NO.  02-4033-GPM |
| HAL D. HICKS, an individual, MIDWEST TRANSIT, INC., an Illinois corporation, and DONALD HOAGLAND, as interim receiver for Midwest Transit, Inc., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| HAL D. HICKS, an individual, | ) ) | |
| Cross-Claim Plaintiff, | ) ) | |
| vs. | ) ) | |
| MIDWEST TRANSIT, INC., an Illinois corporation, and DONALD HOAGLAND, as interim receiver of Midwest Transit, Inc., | ) ) ) ) | |
| Cross-Claim Defendants. | ) | |

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge**:

This matter was before the Court on August 8, 2005, for a hearing on a motion to dismiss and for summary judgment filed by Midwest Transit, Inc., and Donald Hoagland (Doc. 145) and a motion for summary judgment on Counts I, II or, in the alternative, IV of Hicks's amended cross-claim (Doc. 152).

## BACKGROUND

The Court is familiar with the tortuous history of this litigation. It arises in part out of a loan transaction between Hicks and GE Capital; Hicks borrowed $2,144,600.00 and gave two promissory notes and security agreements to purchase 100 Wabash Dry Van Trailers. The trailers were manufactured to meet United States Postal Service specifications for transporting the United States mail. Hicks then leased the trailers to Midwest Transit under two equipment leases for a monthly rental rate of $450.00. One lease is dated June 27, 2000; the other is dated July 7, 2000. Hicks contributed $227.00 per month of his own money to meet his monthly loan obligation to GE Capital.

All went as planned from July 2000 through July 2001. But in late July 2001, Donald Hoagland ("Hoagland") was appointed Interim Receiver for Midwest by a state court judge presiding over a shareholder's derivative suit between Michael and Diane Witters, each a 25% shareholder of Midwest, and Hicks, a 50% shareholder of Midwest. After his appointment, Hoagland dismissed Hicks and other Midwest employees. Hoagland also stopped making lease payments to Hicks, leaving Hicks without the income from the leases. Hicks then defaulted on his notes to GE Capital.

GE Capital brought this lawsuit against Hicks, Midwest, and Hoagland, seeking to foreclose the loans, obtain possession of the trailers, and recover monetary damages for amounts due under the loans. The parties entered into a Consent Order on June 26, 2002 (*see* Doc. 34) agreeing, among other things, that GE Capital had the immediate right to possession of the trailers and that Hicks had a superior right to redeem the loans. Hicks was provided an initial redemption period within which to settle with GE Capital.

At a settlement conference conducted by Magistrate Judge Frazier on June 29, 2002, Hicks settled with GE Capital. Hicks paid $551,757.58 to cure and reinstate the loans and provided

Midwest with directions for delivering the trailers to Hicks.  This Court entered an Order on July 3, 2002, which confirmed the settlement and directed delivery of the trailers (*see* Doc. 40).  Midwest and Hoagland failed to comply with this Court's Order, and contempt proceedings followed.  (*See* Docs. 44, 53.)  Eventually the trailers were delivered to Hicks, with the exception of one trailer which had reportedly been destroyed.  The issue of damages related to the contempt was referred to Magistrate Judge Frazier for an evidentiary hearing.  This Court later adopted a Report and Recommendation from Magistrate Judge Frazier and assessed contempt sanctions against Midwest for use and possession of the trailers in the amount of $56,531.75 (*see* Doc. 78).  A Special Master was later appointed to resolve issues relating to damage to the trailers, but in all other respects this action was stayed pending resolution of the state court litigation (*see* Docs. 102, 103, 130).

The issue of the loans was resolved, the Court dismissed the claims by GE Capital pursuant to a stipulation for dismissal (*see* Docs. 137, 138), and lifted the stay on December 20, 2004 (*see* Doc. 143).  The instant motions followed.

In his amended cross-claim (*see* Doc. 83), Hicks seeks damages for breach of the leases (Counts I and II), contribution and indemnity (Count III), *quantum meruit* (use and damage to the trailers – Count IV), conversion (Count V), and tortious interference with a business contract (Count VII).[1]  Hicks seeks summary judgment only on Counts I and II or, in the alternative, Count IV.  Specifically, Hicks claims that Midwest and Hoagland are liable under the leases because Hoagland, as the Receiver for Midwest, had an obligation to review the leases and make an election whether to accept the leases and perform the obligations thereunder or to reject the leases and return the trailers to Hicks.  Hicks argues that Hoagland failed to make an election and continued to use the

---

[1]This Court entered summary judgment in favor of Hicks on Count VI of the amended cross-claim (petition to quiet title) on June 18, 2003 (*see* Docs. 102, 103).

trailers in Midwest's business operations, thereby making profits and enjoying the benefits of the leases while depriving Hicks of the lease payments. Thus, Hicks argues, Hoagland is deemed by law to have accepted the leases and obligations thereunder, including the obligations to pay rent, to repair the trailers, and to indemnify Hicks for damages incurred as a result of the breach of the leases.

Midwest and Hoagland seek summary judgment on all remaining counts of the amended cross-claim, except the claim for *quantum meruit* (Count IV). They argue that there can be no breach of lease claim because the leases were never valid in the first place. According to Midwest and Hoagland, there also can be no claim for indemnity, because the basis for such a claim lies in the language of the leases. And the claim for contribution falls because the Illinois Joint Tortfeasor Contribution Act only applies if a party might also be subject to liability in tort – a form of liability not at issue here. Midwest and Hoagland also seek dismissal of Count V (a claim for conversion) because the trailers were initially titled in the name of Midwest Transit, not Hicks, and until it was established that the trailers were improperly titled, Hicks did not have a right to the trailers. Hicks did not ask for return of the trailers until October 2001. After that demand was made, the Receiver retained the trailers at the direction of the state court and made payments directly to GE Capital.

Finally, Midwest and Hoagland argue that Count VII also fails because the leases were never valid. Without a valid lease, the argument goes, Midwest never had any obligation to make payments under the terms of the lease; thus, its refusal to make payments to Hicks under an invalid lease cannot have interfered with Hicks's loan agreement with GE Capital. Moreover, Midwest and Hoagland argue that Count VII fails to state a claim because *Hicks* breached the contract with GE Capital. Tortious interference with a business contract requires a breach of contract by a third party, caused by the defendant's wrongful act.

The Court has subject matter jurisdiction over the original claims by GE Capital by virtue of diversity of citizenship:  GE Capital is a Delaware corporation with its principal place of business in the State of Washington; Hicks is an Illinois citizen, Midwest Transit is an Illinois corporation with its principal place of business in Illinois; and Hoagland is an Illinois citizen.  (*See* Doc. 1.)  The amount in controversy, exclusive of interest and costs, exceeds $75,000.  The Court exercises supplemental jurisdiction over the amended cross-claim (Doc. 83) because the claims are so related to the original claims that they form part of the same case or controversy.  *See* 28 U.S.C. § 1367(a).

<u>ANALYSIS</u>

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Wyatt v. UNUM Life Ins. Co. of America*, 223 F.3d 543, 545 (7th Cir. 2000); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law.  *Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999).  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant.  *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). The non-moving party has the burden to prove that "it is entitled to judgment under established principles." *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1222 (7th Cir. 1987).  It cannot simply rest on its pleadings.  If it does not discharge that burden, then it is not entitled to judgment.  *Id.*

The fact that both parties have filed motions for summary judgment does not imply that there are no genuine issues of material fact.  *See R.J. Corman Derailment Servs. v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647-48 (7th Cir. 2003).  The Court could conceivably deny both

motions if the parties have failed to meet their burden of proving that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law.

Here the ultimate issue is whether the leases between Hicks and Midwest were valid. The leases were entered into between Hicks, a 50% shareholder of Midwest Transit, and Midwest Transit. Under Illinois law, Hicks bears the burden of proving that the transaction was fair. *See* 805 ILCS 5/8.60. Michael and Diane Witters have filed affidavits attesting that they did not authorize Hicks to enter into either the June 27, 2000 lease or the July 7, 2000 lease. Hicks has filed nothing to counter these affidavits.

Instead, Hicks relies on the case of *Toushin v. Gonsky*, 395 N.E.2d 1124 (Ill. App. Ct. 1st Dist. 1979). In *Toushin*, a Receiver operated movie theaters for at least seven months without rejecting the leases. The Illinois Appellate Court found that the Receiver had implicitly adopted the leases when he continued to operate the theaters, included amounts for rent due on the theaters as unpaid bills, and paid rent, water, and insurance. The Court noted that "by virtue of appointment, [a Receiver] does not become liable under a lease made prior to his appointment, but has a right to elect whether he will adopt the lease or reject it if he finds it is of no value to the estate." *Id.* at 1129. But in *Toushin*, the Director Conflict of Interest statute, 805 ILCS 5/8.60, was not at issue. As the Lawrence County court found in the shareholder derivative suit (*see* p. 2 of letter opinion), the leases were never valid in the first place, and the failure of Hoagland to reject them cannot trump their invalidity. Moreover, unlike in *Toushin*, the shareholder derivative suit was already on file in Lawrence County when the leases were entered into. Hicks certainly had reason to know that his authority to bind Midwest was in question. It is not surprising that Hicks cannot show that Michael and Diane Witters authorized the transactions, considering that they had filed a lawsuit against him at that point. Again, Hicks has the burden to prove that the transactions were fair. He has failed to

do so.

The other case Hicks relies upon, *Spencer v. World's Columbian Exposition*, 45 N.E. 250 (Ill. 1896), is also distinguishable.  In *Spencer*, the Receiver completed the term of a contract and received profits – then later tried to repudiate the contract.  The more than 100 year old case did not involve a conflict of interest by a director of a corporation, however, and it does not hold that a Receiver's failure to reject a contract trumps its invalidity.  None of the cases Hicks cites involves a questionable contract made with a corporate insider as opposed to an innocent third party.

Finally, Hoagland was ordered by the state court which appointed him to keep the trailers and make payments directly to GE Capital.  Under these facts, Hicks could never show that the Receiver's continued possession of the trailers amounts to an election to accept the invalid leases.

Midwest and Hoagland are right that without valid leases, there can be no claim for indemnity and/or contribution.  The only basis for a claim for indemnity lies within the language of the invalid lease.  As discussed below, this case has nothing to do with tort law, so to the extent Hicks seeks to recover under the Illinois Joint Tortfeasor Contribution Act, he has failed to state a claim upon which relief can be granted.

To prove the tort of conversion, Hicks must show "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) [Midwest and/or Hoagland] wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463 (Ill. App. Ct. 5th Dist. 2004).  The wrongful deprivation of one who has a right to the immediate possession of an object is the essence of a claim for conversion.  *Id.*; *quoting Bender v. Consolidated Mink Ranch, Inc.*, 441 N.E.2d 1315 (Ill. App. Ct. 1982).

It is undisputed that the trailers were initially titled in the name of Midwest Transit, not

Hicks.  Hicks did not even demand the trailers until October 2001.  And, as discussed above, the state court denied Hicks's request to have the trailers returned to him and instead ordered Hoagland to make arrangements to pay GE Capital directly for use of the trailers because without the trailers Midwest would have been forced out of business.  Thus, Hicks cannot show that Midwest and/or Hoagland wrongfully and without authorization assumed control, dominion, or ownership over the trailers.  The claim for conversion fails as a matter of law.

Finally, the claim for tortious interference with a business contract requires proof of five elements: (1) the existence of a valid and enforceable contract between Hicks and another; (2) awareness by Midwest and Hoagland of said contractual relationship; (3) Midwest and Hoagland's intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by Midwest and/or Hoagland's wrongful acts; and (5) damage to Hicks. *Fieldcrest Builders, Inc. v. Antonucci*, 724 N.E.2d 49, 61 (Ill. App. Ct. 1st Dist. 1999).  The contract at issue in this claim is the contract between Hicks and GE Capital.  It was a valid and enforceable contract, so the first element is met.  At some point, Midwest and Hoagland became aware of the contract, so Hicks may be able to establish the second element of the cause of action.  But the problem is that *Hicks* breached the contract with GE Capital by failing to make payments on the loan as promised.  GE Capital did not breach the contract because of any wrongful act on the part of Midwest and/or Hoagland.  Thus, the claim for tortious interference with a business contract also fails as a matter of law.

## CONCLUSION

For the reasons set forth above, the motion to dismiss and for summary judgment filed by Midwest Transit, Inc., and Donald Hoagland (Doc. 145) is **GRANTED**, and Counts I, II, III, V, and VII of the amended cross-claim are **DISMISSED with prejudice**.  The motion for summary

judgment filed by Hal D. Hicks (Doc. 152) is **DENIED**.

The only claim remaining is Count IV of the amended cross-claim, a *quantum meruit* claim for use of the trailers.  That issue will be tried to the Court beginning at 8 a.m. on **Tuesday, October 25, 2005**.

**IT IS SO ORDERED.**

DATED:  08/31/05

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge